Laramore, Judge, and Madden, Judge,
dissenting in part:
We respectfully dissent for the reasons given in the dissenting opinion in Taylor v. United States, 131 C. Cls. 387.
FINDINGS OE FACT
The court, having considered the evidence, the briefs and argument of counsel, and the report of Commissioner Paul H. McMurray, makes the following findings of fact:
1. Plaintiff is a resident of the District of Columbia and has the status of a veteran as defined in the Veterans’ Prefence Act of 1944 (58 St. 387).
2. Plaintiff received a temporary appointment at the United States Naval Air Station, Alameda, California, hereinafter referred to as the Naval Air Station, as an Aircraft Mechanic General, Minimum Rate $10.56 per diem effective April 10, 1946. Plaintiff acquired competitive status on October 4, 1948. As of July 29, 1949, plaintiff was an employee of the Naval Air Station as an Aircraft Mechanic General, Maximum Rate, $14.48 per diem. During his employment he had been variously assigned to the Supply Department, the Assembly and Repair Department, and the Overhaul and Repair Department.
3. Plaintiff was taken into custody by the civil authorities of Alameda County, California, July 22,1949. and was committed by the Superior Court of the State of California in and for the County of Alameda on July 25,1949, as a mentally ill person to the California Department of Mental Hygiene for placement in the Agnews State Hospital, Ag *346 new, California. The court rendered a Judgment of Mental Illness and Order for Care, Hospitalization or Commitment. Plaintiff’s illness was diagnosed as dementia praecox, paranoid type, by the medical authorities of the Agnews State Hospital who reported his condition as of September 1, 1949, as follows:
Patient suffers from the delusion that people are spying on him and peering through windows at him. Believes that the supervisors at the Alameda Station, where he was last employed, were against him. Pears he may do bodily harm to someone at the station. Lately has been very belligerent towards anyone who has jurisdiction over him. Believes he is “Framed” and that his hospitalization has not been justified. Lacks insight.
We also believe this patient is mentally incompetent to handle his own funds.
4. Upon being informed of plaintiff’s commitment to Agnews State Hospital on July 25, 1949, the personnel authorities of the Naval Air Station took steps to separate plaintiff from his employment at the Naval Air Station. Such separation was made effective at 4: 30 P. M. on July 29, 1949. An official personnel action sheet recording this separation was issued under date of August 11,1949, and plaintiff was so notified. Plaintiff, not being eligible for disability retirement, was placed on sick leave until this was exhausted and paid in a lump sum for annual leave accrued through August 11,1949.
5. Late in September 1949 the authorities of the Agnews State Hospital considered plaintiff sufficiently recovered to permit his being given an indefinite leave of absence and, shortly after leaving the hospital early in October 1949, plaintiff asked that he be reinstated in his job at the Naval Air Station. His request was not honored and an appeal was filed from that determination.
6. Under date of March 24, 1950, the Regional Director of the Twelfth Region, United States Civil Service Commission, having received an appeal by plaintiff from the action of the Navy authorities in declining to reinstate him, sustained the appeal under the provisions of Section 14 of the Veterans’ Preference Act of 1944. The Regional Director held that Section 14 was applicable to cases of separation for legal *347 incompetence and that the procedural requirements of Section 14 should have been followed. Accordingly he recommended that plaintiff be given what was known as a “Reappointment to effect restoration to former position * * The Commanding Officer of the Naval Air Station appealed from the decision of the Regional Director but the appeal was denied. The decision of the Regional Director was affirmed by the Civil Service Commission’s Board of Appeals and Review under date of May 24, 1950. He was restored to his former position effective June 28, 1950, as Aircraft Mechanic General, maximum rate $14.48 per diem.
7. The Civil Service Commission did not recommend that plaintiff’s restoration to duty be made retroactive to the date of his separation and declined to assist plaintiff’s representative, Miss Eleanor D. Clark of the American Red Cross, in obtaining back pay for plaintiff. The letter to Miss Clark from the Twelfth Regional Director read, in part, as follows:
* * * In Mr. Armand’s case, our recommendation of March 24, 1950 was that Mr. Armand be restored to his former position but, in view of the circumstances involved in his separation, we did not recommend that his restoration be made retroactive to the date of his separation.
8. Plaintiff’s reinstatement was held in suspension until June 28, 1950, because the medical officers of the installation considered that it was essential to determine whether the plaintiff could safely be assigned to duty. Plaintiff was discharged from the Agnews State Hospital prior to being reinstated in his former position.
9. After plaintiff’s reinstatement the authorities at the Naval Air Station made an effort to place plaintiff in a job which he could perform and have an opportunity to render satisfactory service. Under date of September 12, 1950, plaintiff was charged with insubordination which carried a maximum penalty of removal and was directed to answer the charges within 72 hours. At this time the Overhaul and Repair Officer requested the Senior Medical Officer to make an examination of plaintiff stating in part as follows:
*348 2. Mr. Armand’s first assignment was Shop 2201 (Aircraft Disassembly). He protested each job given him by that shop claiming that it was injurious to his health. After numerous attempts to find some type of work within his trade rate that would be satisfactory, his supervisor requested that he report to the dispensary for examination and recommendation. Dr. Guida conducted the examination and reaffirmed previous recommendations that Mr. Armand be given work away from fumes and dust and that no lifting in excess of 30 pounds be required.
3. Jobs assigned Mr. Armand subsequent to Dr. Guida’s examination were not satisfactory to Mr. Armand, who avoided work that did not please him by stating either that it was unsuitable to his health condition or that if was a helper’s job and below his dignity as a mechanic. He also objected to working with others and requested that he be assigned to jobs by himself.
4. Due to Mr. Armand’s increasingly belligerent attitude toward the shop supervivors, and the alarm of employees working in his vicinity, Mr. Armand was placed under different supervision. This change made no difference in his actions.
5. In a further effort to place Mr. Armand, he was loaned to the Assembly Division and placed in a shop with which he was familiar. This change resulted in a temporary improvement in his attitude which persisted until the shop ran out of his favorite type of work. Attempts to reassign him as a result of the above culminated in an interview with his supervisor in which he blamed several previous supervisors for all his troubles and threatened to kill one of them, Mr. Ashton.
6. No disciplinary actions have been processed against Mr. Armand since his reinstatement despite numerous provocations because this department was strongly desirous of giving him every chance to reestablish himself. Previous experience had shown that attempts to process such actions greatly excited him and brought him to the verge of violence in some cases.
7. In view of the continuing difficulties set forth in the foregoing, it is the opinion of this department that Mr. Armand should be referred to the Medical Department for examination to determine his psychological suitability for further employment. Accordingly, it is requested that such examination be conducted at the earliest possible time.
*349 The Senior Medical Officer, who had been familiar with plaintiff’s case for some time, made an examination of plaintiff and reported that he was “physically qualified but not psychologically suitable for employment aboard this Station.” At the same time the Medical Officer also notified the Industrial Eelations Officer as follows :
1. In the interest of safety of personnel, the immediate physical removal of the subject named civilian employee is considered necessary because his past actions indicate that violence may be anticipated as a consequence of his receipt of the removal notice.
10. Under date of September 12, 1950, the Commanding Officer of the Naval Air Station notified plaintiff by registered mail, special delivery, of his removal under the following circumstances:
1. On 28 June 1950, you were reinstated at this activity. Your first assignment was Shop 2201 (Aircraft Disassembly). You protested each job given you by that shop claiming that it was injurious to your health. After numerous attempts to find some type of work within your trade that would be satisfactory, your supervisor requested that you report to the dispensary for examination and recommendation. The Industrial Medical Officer conducted the examination and _ reaffirmed previous .recommendations that you be given work away from fumes and dust and that no lifting in excess of 30 pounds be required. Jobs assigned to you subsequent to the Industrial Medical Officer’s examination were not satisfactory to you. You avoided work that did not please you by stating either that it was unsuitable to your health condition or that it was a helper’s job and below your dignity as a mechanic. You also objected to working with others and requested that you be assigned to jobs by yourself.
2. Due to your increasingly belligerent attitude toward the shop supervisors, and the alarm of employees working in your vicinity, you were placed under different supervision. This change made no difference in your actions. In a further effort to place you, you were loaned to the assembly Division. This change .resulted in a temporary improvement in your attitude which persisted until the shop ran out of your favorite type of work. Attempts to reassign you as a result of the *350 above culminated in an interview with your supervisor in which you blamed several previous supervisors fo.r all your troubles and threatened one of them.
3. You were again examined by the Industrial Medical Officer on 12 September 1950, and found to be physically qualified but not psychologically suitable for employment aboard this Station.
4. Because of your psychological unfitness for employment aboard this Station as outlined above, and since your continued employment would be hazardous not only to yourself but fellow employees, you are hereby given 30 days notice of the proposal to effect your separation from the rolls of this activity. This notice period will begin on 14 September 1950 and will end on 13 October 1950. Your last day of active duty will be 13 September 1950. You will be carried on annual leave if accrued and due, otherwise on leave without pay during this notice period. You are further notified the proposed separation will not be effective earlier than 13 October 1950 at 4:30 P. M.
5. This letter constitutes an advance written notice of a proposed removal under Section 14 of the Veterans’ Preference Act. You may exercise your right to answer personally and in writing these charges and to furnish affidavits in support of your answers in accordance with the Act. Ordinarily five working days is considered a reasonable time in which to reply and/or request a personal hearing if desired. An extension of time not exceeding five more working days may be granted in which to .reply and/or request a hearing provided you make a justifiable request in writing and approval is given.
6. Your reply should be addressed to the Industrial Eelations Officer, Industrial Eelations Department, U. S. Naval Air Station, Alameda, California.
11. Under date of October 5, 1950, the Commanding Officer of the Air Station again notified plaintiff of his removal effective October 14, 1950, at 4: 30 P. M. because of his “psychological unfitness for employment” and advised him of his right of appeal. This action was taken after receipt of plaintiff’s reply to Commanding Officer’s charges dated September 12,1950.
12. By letter dated October 10,1950, the Commanding Officer notified plaintiff that he had considered plaintiff’s reply *351 to the charges made and had decided that plaintiff should be removed October 14, 1950. This letter states in part as follows:
# * *
2. By reference (a) you were advised of your right to answer personally and in writing the removal charges within five working days. By telephone call to the Industrial Relations Officer you requested an extension of time for the filing of your answer. You were granted an extension until 26 September 1950. It is evident that your reply to these charges has extended beyond the time granted you in which to make such reply. This alone normally would be considered sufficient reason for not considering your answer to the removal charges. However, in the interest of fairness your reply has been fully considered.
3. After a complete investigation it has been found that there is no evidence to support your claim that you did not avoid work assignments given to you by your supervisor but to the contrary it is evident that your attitude towards supervision and the work assigned to you was such that it directly affected your output. You refer to having questioned certain orders and instructions because they were contrary to “the book of instructions”. You should know that journeymen mechanics are not held responsible for determining accuracy of instructions issued by competent supervision.
4. In your reply you have admitted that you have not always accepted assignments without arguing. Your admission supplemented by statements from your supervisor about your argumentative nature, tend to indicate your unfitness for further Federal employment.
5. In your reply you ask that this activity grant two requests. First you mention back pay, annual leave, sick leave and vacation leave. During your thirty day notice period you were entitled to whatever annual leave was accrued to your credit. There is no such thing as vacation leave as you stated. The only leave to which you are entitled is the annual leave which may have been accrued to your credit. As to back pay, the matter of any back pay which may be due you under existing regulations will be thoroughly investigated and if you are entitled to back pay you will receive the amount indicated. Second you request reinstatement to your position at this station until such time as any back pay *352 due you is granted and until such time as you may transfer to another naval activity. Your retention on the rolls of this station would have no bearing upon your eligibility for back pay. The possibility of your being transferred to another naval activity is unpredictable and since it has already been determined that your employment here should not be continued it is not possible to consider your restoration to employment for any period of time during which you seek transfer to another activity. It is stated in your letter that “It is agreed that for me to remain in the employ of the Alameda Naval Air Station for an indefinite period is neither an acceptable thought for you or for me.” It is apparent from the foregoing that since any transfer arrangements would necessitate your employment for an indefinite period that your request is out of the question.
# * =¡: Ü: #
7. You may appeal this decision to the Under Secretary of the Navy via the Commanding Officer, Naval Air Station, Alameda, within ten days of the effective date of your separation action. You may also appeal this decision to the Eegional Director, U. S. Civil Service Commission within ten days following the effective date of the adverse action.
13. Under date of November 15,1950, the Twelfth Eegional Office of the U. S. Civil Service Commission received a communication from plaintiff dated November 6, 1950, relative to his removal and apparently treated this as plaintiff’s appeal. Under date of January 24,1951, the Eegional Director found that plaintiff’s removal was for such cause as would promote the efficiency of the service and sustained the action of the Naval Air Station in removing the plaintiff. The report of the Eegional Director in part as follows :
$ # * $ $
The appellant was interviewed at the Santa Eita Be-habilitation Center, an institution directed by the Sheriff of Alameda County, California, where the appellant is presently confined under a sentence of six months for a violation of drunk driving. The appellant’s conviction on the criminal charge is not related to his removal from employment or the charges brought against Mr. Armand by the Naval Air Station in effecting his removal. The appellant stated under oath that he had arguments with *353 his supervisors while at work but he contends that it was all the fault of the supervisors. The appellant alleges that the employing agency’s officials have “hounded” him, that he has been closely observed at and away from work. The appellant alleges that the charge letter he received is a “pack of lies.” The appellant states that the Medical Officer’s report is nothing but lies and “he is in with the other louses at the NAS.” Mr. Armand did not offer statements or proof tending to refute the agency’s charges. In a letter of answer to the agency’s letter of charges, which was prepared by a person or persons having no personal knowledge of the appellant’s conduct, we find that the appellant denied that he requested that he be allowed to work alone and that his supervisor thought he could not or would not work peacefully with a group. The appellant’s answering letter to the agency’s letter of charges was dated at Alameda, California, on October 2, 1950. The appellant stated therein that his supervisor gained this impression because he questioned orders and instructions which the appellant said were contrary to instructions for a particular job. In the appellant’s'letter of October 2,1950, he denied that he had threatened any supervisor or co-worker since his reinstatement at the Naval Air Station. The appellant further denied that he was not psychologically suited for employment at the Naval Air Station. Mr. Armand stated he resented being placed in a position where men of less training and qualification instructed him to accomplish work which he considered inferior. The appellant admitted that while he tried to accept such assignments as were given him “with as little argument as possible,” he had not always succeeded. The appellant stated in his letter that he resented the fact that others no better qualified for the work were given overtime and responsibilities while he was denied overtime employment. The appellant stated “I admit I am of a nervous disposition, and have had many difficult and trying experiences in my lifetime.” The appellant stated that things which had happened to him during the past two years had increased his nervousness and “has led me to be believed to be psychologically unfit by you and others.”
During the course of the Commission’s investigation, certifications were received from the Air Station’s Industrial Eelations Officer and the Air Station’s Industrial Medical Officer indicating that attempts by the agency *354 to utilize the appellant’s services were not successful. The Industrial Medical Officer reported that he had twice examined the appellant and had found him to be physically qualified but not psychologically suitable for employment at the Air Station. It is the opinion of the Air Station’s Medical Officer that because of the appellant’s past actions Mr. Armand is a hazard to other employees.
Seven former supervisors or co-workers were interviewed and all of these persons indicated that the appellant was possessed of a hot temper; refused to work with other employees; threatened other employees with violence ; refused to do work to which he was assigned and was erratic and undependable. It appeared during the course of investigation that the appellant’s former supervisors and co-workers are afraid of the appellant and fear the action he might take if they testified against him. It appears from the investigation that this fear is based upon the appellant’s threats to former supervisors, which are reported from several sources as a statement made by the appellant in this manner, “You and a lot of others here are digging your own graves and you are going to get in them. ” The appellant is reported to have threatened other supervisors during periods of anger and, on one occasion, is reported to have refused to perform any work for a period of four days because he was dissatisfied with the job to which he was assigned. Supervisors indicated that when they asked the appellant to work and when he did not like the work he would become very belligerent, get angry and would pound a table or desk with his fist and refuse to listen to the person talking to him.
Upon the preponderance of evidence contained in this file we are led to the opinion that Mr. Armand has been incapable of adjusting himself to work with other employees and that he has been found to be an employee who is not amenable to discipline. Mr. Armand has demonstrated his incapability to accept work assignments given him and has further shown that he will do only that work which he desires to do and will accomplish it in his own manner, ignoring the instructions of his supervisors. The record indicates on one occasion the appellant spent four days doing nothing other than coming to work and placing himself in a smoking station, refusing to do any work because he was dissatisfied with the work properly assigned him by his supervisor. *355 This action, which resulted in a transfer of Mr. Armand to a different division, in and of itself indicates his unfitness for continued employment and should have been sufficient basis for his .removal from the service. Upon the basis of the record it is our opinion that appellant’s removal was warranted and should be sustained.
14. Under date of June 6,1951, the Chairman of the Civil Service Commission Board of Appeals and Review notified plaintiff as follows:
* rfs * * #
The Commission’s Board of Appeals and Review after considering all of the facts and circumstances in your case has found that the decision of the Twelfth Region was warranted and that decision, therefore, has been affirmed. No further appeal will be entertained by the Commission as to this particular case unless new and material evidence is offered for consideration.
Under date of August 14, 1951, the Chairman of the Board of Appeals and Review also wrote plaintiff as follows:
Reference is made to your personal interview with one of the Examiners of the Board of Appeals and Review, at which time you requested that the Commission review the decision of this Board and the Twelfth U. S. Civil Service Region sustaining the action of the U. S. Naval Air Station, Alameda, California, removing you from the position of Aircraft Mechanic, General, for cause.
In view of your request your entire file was forwarded to the Commission for the personal attention of the Commissioners themselves. After a careful study of all the pertinent facts relating to your removal from the service the Commission has determined that the decision previously reached by the Twelfth Regional Office and this Board is warranted and has, therefore, been affirmed.
On August 16, 1951, Civil Service Commissioner Frances Perkins wrote plaintiff as follows:
Reference is made to your personal call at my office today, at which time you had received the letter of August 14, 1951, signed by the Chairman of the Board of Appeals and Review.
I can only repeat to you what the second paragraph of that letter states. The three Commissioners have personally and carefully studied the facts and information *356 relating to your removal from the U. S. Naval Air Station, Alameda, California, and have affirmed the previous decision.
15. The record does not establish that the personnel actions taken by the Department of the Navy or the Civil Service Commission with respect to plaintiff’s re-employment and subsequent removal from employment on October 14, 1950, were arbitrary, capricious, or malicious.
16. The proof fails to establish that plaintiff was able to perform the duties of an Aircraft Mechanic General, Maximum Eate, at the Naval Air Station during the period from July 22, 1949, to June 27, 1950. His employment during the period June 28, 1950, to September 12, 1950, was the result of the Civil Service Commission’s order for his reinstatement because it was found by the Commission that, in discharging the plaintiff from employment as of July 29, 1949, the appropriate procedural steps required by Section 14 of the Veterans’ Preference Act of 1944 had not been followed.
17. Under date of September 1,1949, the Medical Director and Superintendent of the Agnews State Hospital advised the U. S. Veterans’ Administration at San Francisco, California, of plaintiff’s hospitalization since July 25,1949. On September 13, 1949, plaintiff filed an application with the Veterans’ Administration for a pension for non-service-connected disability because of mental illness since June 1949. Under date of October 4, 1949, a Veterans’ Administration rating agency of original jurisdiction, Eating Board Number 4 at San Francisco, California (consisting of a medical, an occupational, and a claims specialist) rated plaintiff permanently and totally disabled and incompetent from July 25, 1949. He was rated as one hundred percent disabled under the applicable Schedule for Eating Disabilities, because of dementia praecox, paranoid type. As a result of this and subsequent determinations by the Veterans’ Administration, plaintiff received a non-service-connected-disability pension of $60.00 per month. As of December 16, 1949, plaintiff’s classification was changed by appropriate authority from incompetent to competent.
*357 18. Plaintiff made no attempt to obtain employment after bis release from the Agnews State Hospital in October 1949 other than his efforts to regain his former Civil Service position. He periodically contacted the Naval Air Station to make inquiries about being reemployed. Plaintiff testified he expected to be reemployed at the Naval Air Station most any day and, accordingly, he saw no reason for seeking employment elsewhere. Plaintiff was physically confined at the Agnews State Hospital from July 25, 1949, to October 1, 1949, on which date he was given an indefinite leave of absence. He did not receive his full release until June 17, 1950. In October 1950 plaintiff was arrested and convicted of drunken driving and confined at the Santa Rita Rehabilitation Center, Alameda County, California, from October 9,1950, to March 14,1951. About June 1951 plaintiff came to Washington, D. C., where he attended school under Public Law 346, 78th Congress, the Servicemen’s Readjustment Act (57 Stat. 43), from July 1951 through December 1953, receiving $75.00 per month for subsistence plus other benefits in addition to his Veterans’ Administration pension of $60.00 per month. It is not established that he had, or sought, remunerative employment during this period.
CONCLUSION OF LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that plaintiff is entitled to recover his pay for the 30-day period, September 14, through October 13, 1950, and judgment will be entered to that effect. The amount of recovery will be determined pursuant to Rule 38 (c).
In accordance with the foregoing opinion and on a memorandum report of the commissioner as to the amount due plaintiff, it was ordered on December 5, 1956, that judgment be entered for the plaintiff for $258.40.